STATE of Iowa, Appellee,

v.

Vincent DUNCAN, Appellant.

No. 64531.

Supreme Court of Iowa.

Nov. 25, 1981.

Jerald Feuerbach of Gomez, Feuerbach, May & Pries, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland and Merle Wilna Fleming, Asst. Attys. Gen., and William E. Davis, Scott County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK, and SCHULTZ, JJ.

UHLENHOPP, Justice.

If on a single occasion a person burglarizes a marina and a boat in the marina, may the county attorney prosecute the incident as one overall burglary, or must he consider the entries into the marina and the boat as two burglaries? This is the principal problem that confronts us in the present appeal. Cf. State v. Amsden, 300 N.W.2d 882 (Iowa 1981) (similar problem with crime of theft).

The Lindsey Park Yacht Club has a marina at the foot of Mound Street in Davenport, Iowa, consisting of eight slips where boats are moored. The marina is surrounded on the land side by a high fence with locked gates. The fence extends out into the water for about three and a half feet on both sides. A clubhouse stands in the center. Only members and guests have access to the marina.

Marcus Low moors his cabin cruiser at slip 8 in the marina. The boat has an enclosed cabin and a partially enclosed cockpit. It is equipped with an alarm system attached to an air horn, which is activated by touching, jiggling, or moving the door or hatchway into the cabin or by moving the radio on the bridge.

Keith and Mary Ann Kelesen moor their boat nearby. On the early morning of September 2, 1979, the Kelesens and their daughter, asleep in their boat, were awakened when the air horn sounded on the Low boat. Mrs. Kelesen went on deck and saw defendant Vincent Duncan running about "two boats away" from the Low boat. Defendant disappeared and then reappeared outside the fence and got into a Volkswagon car. Mr. Kelesen saw defendant running about fifty or sixty feet away. The daughter saw defendant running away from slip 8. All three subsequently identified defendant at trial as the person they saw running away.

The police were called. They arrived and found defendant in the Volkswagon, apparently asleep. He did not appear to be intoxicated, and he did not have shoes on his feet.

An officer testified that the Low boat was "miraculously clean." He found only one print on the boat, a palm print on the "top of the hatch of a companionway door." He testified the print was at most two days old and could have been made within a shorter period of time. The print was not analyzed. The officer also found a pair of boots on the dock near the boat.

Defendant testified at the subsequent trial. He stated that he and a woman companion drank at bars the evening before and then separated. His testimony included the following:

A. Well, next thing I remember is, I was standing—I was standing down by some water, and I was between two boats, and I remember I was standing down there. I was looking at the water and I was thinking that—about going swimming to sober up, because I—

Q. Did you jump in the water?

A. No, I was—I remember I was thinking about it and—because I wanted to sober up, and then I—this boat I was standing by, I grabbed it like this and pushed it down, I gave it a—I give it a rock.

Q. Then what happened?

A. And then this—this horn sounded.

Q. Then what did you do?

A. Then I remember I was running—I was running down this—down this dock.

Q. Was this horn very loud?

A. Yes, it sounded—it was real loud. It sounded like one that was a tornado siren. That's what it reminded me of.

Defendant testified he took off running, saw the Volkswagen, and got in it. He stated that the next thing he remembered the police were there and he was outside the car. He also testified:

Q. So all you remember is grabbing some railing?

A. No, I remember I was standing at the end of the dock between two boats, and I was looking at the water and I was contemplating about going swimming.

Q. Okay. Now you say you were at the end of the dock. You were on the dock that you walk on to get to the boat?

A. All I remember is that there is a dock, and there is a boat here and the boat here, and I was standing between them. I don't know—

Q. So you were between the two boats, then?

A. Yeah.

Q. Okay. Do you remember being on Marc Low's—or being on any boat that night?

A. No, I don't.

Q. Is it possible that you were on those boats, or one of those boats?

A. Could have been.

Our statute defines burglary thus in section 713.1, The Code 1979:

Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure or area enclosed in such a manner as to provide a place for the keeping of valuable property secure from theft or criminal mischief, such occupied structure or place not being open to the public, or who remains therein after it is closed to the public or after the person's right, license

or privilege to be there has expired, or any person having such intent who breaks an occupied structure or other place where anything of value is kept, commits burglary.

Section 713.2 specifies aggravating circumstances constituting burglary in the first degree. Under section 713.3, all other burglary is in the second degree.

The county attorney charged defendant with one count of second-degree burglary, alleging that defendant "entered an occupied structure or area enclosed in such a manner as to provide a place for the keeping of valuable property secure from theft or criminal mischief" or that defendant "did break an occupied structure or other place where anything of value is kept. . . ."

Defendant pleaded not guilty, a jury found him guilty, the trial court sentenced him, and he appealed. We transferred the appeal to the Court of Appeals, which reversed the conviction by a vote of three-to-two. We thereafter granted further review.

In his appeal defendant advances several propositions which raise three basic issues. Did the trial court erroneously admit testimony of the palm print into evidence? Was the evidence of the elements of burglary sufficient to generate a jury question? Should the court have required jury unanimity as to all the elements of at least one breaking or entering in the episode?

■ I. *Palm print.* Defendant argues, correctly, that no evidence was introduced showing the palm print was of his palm. Nor was evidence introduced to exclude the making of the print by someone else. The print could not be used by the State to identify defendant as the burglar. *State v. Taylor*, 201 N.W.2d 724, 726–27 (Iowa 1972) (foundation requirement). Defense counsel could have properly objected at trial to any such argument by the prosecutor to the jury. On request, defendant would have been entitled to a jury instruction that the print could not be considered on the identity issue. Those procedures, however, did not occur.

When the prosecutor introduced evidence of the physical setting of the case, he had a right to show the attendant physical facts whether they helped his case, hurt his case, or were neutral. The defense had a corresponding right. *State v. Pilcher*, 242 N.W.2d 367, 371 (Iowa 1976); *State v. Drake*, 219 N.W.2d 492, 494 (Iowa 1974) ("[T]he circumstances surrounding the commission of a crime may ordinarily be shown, even if such evidence would otherwise be inadmissible."); *Battese v. State*, 425 P.2d 606, 610 (Alaska 1967) (footprints at scene may be shown although not connected with accused); *People v. Robbins*, 21 Ill.App.3d 317, 323–24, 315 N.E.2d 198, 203 (1974); *State v. Harvey*, 85 S.D. 202, 204, 179 N.W.2d 723, 724 (1970); *State v. Mehlaff*, 72 S.D. 17, 20–21, 29 N.W.2d 78, 80 (1947) (car tracks); *Rucker v. State*, 51 Tex.Cr.R. 222, 101 S.W. 804 (1907); 22A C.J.S. *Criminal Law* § 603 (1961) ("Ordinarily in criminal prosecutions, evidence as to all the facts and circumstances attending the commission of the crime charged is admissible.").

The principle is subject to the exclusion of attendant circumstances, in the discretion of the court, when prejudice to the accused outweighs probative value. *State v. McDaniel*, 265 N.W.2d 917, 921 (Iowa 1978). Defendant could have sought a protective ruling by the court. The present record, however, does not disclose an abuse of discretion by the trial court. We find no error on this point.

II. *Sufficiency of evidence.* Defendant argues that the trial court erroneously overruled his motion for acquittal. In considering such a motion, a court views the evidence in the light most favorable to the State and draws all fair and reasonable inferences from it, *State v. Howard*, 284 N.W.2d 201, 203 (Iowa 1979), taking all the evidence into consideration, *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980), both direct and circumstantial. *State v. O'Connell*, 275 N.W.2d 197, 204–05 (Iowa 1979).

We have examined this record and hold that a jury question was engendered on all the elements, *State v. Lewis*, 242 N.W.2d 711, 719–23 (Iowa 1976), as to burglary of the marina and of the boat. The trial court did not err.

III. *One burglary or two?* Defendant contends by two approaches that the trial court erred with respect to the issue of whether the episode involved one burglary or two (1) in the court's marshalling instruction and (2) in the form of submission of the case to the jury.

The State introduced substantial evidence from which the jury could infer that defendant entered the marina with the requisite intent for burglary. By the same token the State introduced substantial evidence that defendant so entered the Low boat. We need not decide whether the State could have convicted defendant of two separate burglaries based on this one occasion. *Compare Tobler v. State*, 371 So.2d 1043 (Fla. App.1979); *People v. Palmer*, 83 Ill.App.3d 732, 39 Ill.Dec. 262, 404 N.E.2d 853 (1980); and *State v. Tettamble*, 561 S.W.2d 414 (Mo.App.1977), *with* A.B.A. *Standards for Criminal Justice, Joinder and Severance* § 1.3(c), Commentary at 23, 24 (1968).

The trial court instructed the jury in this fashion in No. 6:

Before the defendant can be found guilty of burglary in the second degree the burden is upon the State to establish by the evidence beyond a reasonable doubt each and all of the following propositions:

1. That on or about the 2nd day of September, 1979, in Scott County, Iowa, the defendant either broke or entered or remained in at a time when the same was closed to the public, a boat owned by one Marcus Low or the premises known as the Lindsey Yacht Club.

2. That (a) said boat was an occupied structure, or (b) that Lindsey Yacht Club was an area enclosed in a manner as to provide a place for the keeping of valuable property secure from theft as defined in instruction No. 8.

3. That the defendant had no right, license or privilege to enter or remain in said occupied structure or area.

4. That such occupied structure and/or enclosed area were not open to the public at the time.

5. That at said time it was the intent of the defendant to commit a theft.

If the State has failed to so establish one or more of the foregoing propositions beyond a reasonable doubt you should find the defendant not guilty of the offense of burglary in the second degree, and you will then consider the lesser included offense of criminal trespass; but if the State has established all of said propositions by the evidence beyond a reasonable doubt, then it will be your duty to find the defendant guilty of such offense.

The court submitted general forms of verdict of guilty or not guilty. Form 1, which the jury used, was as follows: "We, the jury, find the defendant guilty of the crime of burglary in the second degree."

■ The first question is whether the State could properly charge one incident, alleging the marina and the boat in a single count. In this jurisdiction prosecutors have long been allowed to allege facts in the alternative to meet the contingencies of proof. *State v. Aldrich*, 231 N.W.2d 890, 896 (Iowa 1975); *Powers v. McCullough*, 258 Iowa 738, 747–48, 140 N.W.2d 378, 385 (1966); *State v. Hochmuth*, 256 Iowa 442, 445–47, 127 N.W.2d 658, 659 (1964); *State v. Watrous*, 13 Iowa 489, 493–95 (1862); *State v. Cooster*, 10 Iowa 453, 454–56 (1860); *see also Smith v. State*, 241 Ind. 1, 4–7, 168 N.E.2d 199, 201–02 (1960) (acts need not be simultaneous); *Brogan v. State*, 199 Ind. 203, 205, 156 N.E. 515, 517 (1927) (four railroad cars involved—no duplicity); 42 C.J.S. *Indictments and Informations* § 166, at pp. 1121–22 (1944) ("[W]here a statute makes either of two or more distinct acts connected with the same general offense and subject to the same measure and kind of punishment indictable separately and as distinct crimes when each shall have been committed by different persons and at different times, they may, when committed by the same person and at the same time, be coupled in one count as to-

gether constituting but one offense; and this is true, although a disjunctive particle is not employed in the statute, but a conjunction is used which is disjunctive in sense"). Rule 6(1) of the Rules of Criminal Procedure, which requires separate counts for "more than one public offense" arising out of the same transaction or occurrence, does not nullify the principle. Citation of rule 6(1) begs the question; the very question is whether the one occasion involving the marina and the boat may be considered a single burglary or must be considered separate burglaries. The State does not charge that defendant, while in the marina or boat, also stole or robbed or raped. We hold that the occasion involving burglary of the marina and the boat could be charged as one burglary consisting of the marina and boat conjunctively or alternatively and could be correspondingly submitted to the jury.

■ The second question is whether the jury had to be unanimous on guilt with respect to the boat or with respect to the marina, or whether the jury could find defendant guilty of burglary by a combination of votes respecting the marina or the boat. A unanimous verdict is of course required in this kind of case. Iowa R.Crim.P. 21(5).

■ At this point another principle intervenes. "It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon another." *People v. Sullivan*, 173 N.Y. 122, 127, 65 N.E. 989, 989 (1903). Stated differently, "[I]f substantial evidence is presented to support *each* alternative method of committing a single crime, and the alternatives are not repugnant to each other, then unanimity of the jury as to the mode of commission of the crime is not required." *State v. Arndt*, 12 Wash.App. 248, 252, 529 P.2d 887, 889 (1974). *See also* 75 Am.Jur.2d *Trial* § 884, at 760 (1974) ("A conviction will not be set aside because of an instruction which permits a conviction notwithstanding a difference between jur-

ors as to which of two contradictory facts, each consistent with guilt, is established by the evidence."); Annot., 72 A.L.R. 154 (1931). Among the decisions which apply this rule are *People v. Chavez*, 37 Cal.2d 656, 670–72, 234 P.2d 632, 641 (1951); *Blake v. State*, 239 Ga. 292, 298, 236 S.E.2d 637, 642–43, *cert. denied*, 434 U.S. 960, 98 S.Ct. 492, 54 L.Ed.2d 320 (1977); *People v. Wilson*, 51 Ill.2d 302, 309–11, 281 N.E.2d 626, 630 (1972); *Harris v. State*, 182 Md. 27, 30–32, 31 A.2d 609, 611 (1943); *State v. Jackson*, 242 Mo. 410, 418–19, 146 S.W. 1166, 1168–69 (1912); *State v. Souhrada*, 122 Mont. 377, 385, 204 P.2d 792, 797 (1949); *State v. Hazelett*, 8 Or.App. 44, 46–49, 492 P.2d 501, 502–03 (1972); *State v. Flathers*, 57 S.D. 320, 321–24, 232 N.W. 51, 52–53 (1930); *Manson v. State*, 101 Wis.2d 413, 304 N.W.2d 729, 737–38 (1981). We applied an aspect of the rule in *State v. Williams*, 285 N.W.2d 248, 269–70 (Iowa 1979), *cert. denied*, 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980). The trial court did not err in its instructions and submission of the case.

We thus reinstate the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED.

JUDGMENT OF DISTRICT COURT AFFIRMED.